# United States Tax Court

161 T.C. No. 5

WHISTLEBLOWER 8391-18W,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8391-18W.                    Filed October 16, 2023.

————

In 2006 an audit team for R opened an examination for T. In 2008 P submitted to R's Whistleblower Office (WBO) a claim for an award, identifying T as a participant in a dividend tax withholding scheme. In 2009 the audit team received information relating to T, of which P was the source. The WBO concluded that the audit team used P's information during the pre-existing examination of T and that proceeds were collected as a result of this action. In 2018 the WBO issued to P a final determination that P was entitled to a mandatory award of 22% of the collected proceeds. P contends that the WBO abused its discretion by not determining an award of 30%. P also contends the WBO abused its discretion by not paying the 22% while P challenged the withholding of the remaining 8%, by not paying interest on the award due to P, and by applying a sequestration reduction to P's proposed award.

*Held*: The WBO did not abuse its discretion with regard to P's claim identifying T.

*Held, further*, I.R.C. § 7623(b) does not provide for the payment of interest on a mandatory award to a whistleblower.

————

*Kaitlyn T. Devenyns*, *T. Barry Kingham*, and *Jason D. Wright*, for petitioner.

*George E. Heuring, Jr.*, *Eric R. Skinner*, *Stephanie S. Washington*, and *Jadie T. Woods*, for respondent.

OPINION

NEGA, *Judge*: On September 20, 2018, petitioner filed a Motion for Partial Summary Judgment (petitioner's Partial Motion). On July 10, 2020, respondent filed a Motion for Summary Judgment (respondent's Motion). On September 8, 2021, petitioner filed a Motion for Summary Judgment (petitioner's Motion).

On February 28, 2022, petitioner lodged a Motion to Supplement the Record (petitioner's First Motion to Supplement). By Order issued July 21, 2022, we granted petitioner's First Motion to Supplement in part and ordered that the parties file "a first supplement to the administrative record that shall include sub-exhibit 2-P of Exhibit B, the letter relating to claim number 2010-000949 in Exhibit F, and Exhibits A, C, D, E, G, H, I, K, M, and N"; petitioner's First Motion to Supplement was otherwise denied. On August 24, 2022, the parties filed the First Supplement to the Administrative Record.

On September 7, 2022, petitioner filed a Motion to Supplement the Administrative Record (Second Motion to Supplement). By Order issued February 16, 2023, the Court granted petitioner's Second Motion to Supplement and ordered that the parties file "a second supplement to the administrative record that shall include Exhibits O, P, and Q." On March 17, 2023, the parties filed the Second Supplement to the Administrative Record. In April and May 2023 the parties filed supplemental briefs, responses, and replies to address the two supplements to the administrative record, as ordered by the Court on March 3, 2023.

For the reasons set forth below, we will deny petitioner's Partial Motion, deny petitioner's Motion, and grant respondent's Motion.

*Background*

I.     *Petitioner's Background and the Senate Investigation*

Petitioner was an employee of Redacted 3 from 1995 until June 2005. In 2003–04, petitioner became aware of various tax strategies being employed and marketed by Redacted 3. Generally, these transactions involved the establishment of trading platforms that permitted offshore hedge funds to avoid paying taxes on dividends received from entities in the United States. Petitioner does not have a tax background and was not involved in the marketing, development, promotion, or implementation of Redacted 3's tax transactions.

In June 2005 petitioner contacted the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS), making allegations against Redacted 3 regarding a dividend withholding tax scheme and submitting two binders of Redacted 3 internal documents related to the withholding tax issue. On July 25, 2005, petitioner filed an initial Form 211, Application for Award for Original Information, referencing the information that he had previously submitted to CID. The Form 211 identified a taxpayer other than Redacted 2, 4, or 5 and does not form the basis of this case. Petitioner met with CI officials from June 2005 through May 2006 to discuss the withholding tax scheme issue.

On or about March 21, 2006, petitioner submitted Form 211 that identified Redacted 2 as a participant in the dividend tax withholding scheme.

On June 3, 2006, the IRS campus in Ogden, Utah, received from petitioner two Forms 211 making allegations against taxpayers other than Redacted 2, 4, and 5 regarding the withholding tax issue. These Forms 211 do not form the basis of this case.

In October 2007, after a year of no contact by the IRS regarding his submissions, petitioner began meeting with members of the U.S. Senate's Permanent Subcommittee on Investigations (PSI). In November 2007 petitioner provided documents to the PSI, and from November 2007 through September 2008 petitioner continued to work with the PSI by explaining the documents, structures, and strategies and by identifying key players from various companies involved in the withholding tax issue.

In 2008 the PSI conducted a hearing on withholding tax on dividends paid to non-U.S. residents. As part of this hearing, the PSI issued a report entitled "Dividend Tax Abuse: How Offshore Entities Dodge Taxes on U.S. Stock Dividends" (Senate PSI Report). The Senate PSI Report discusses multiple financial institutions, including Redacted 2. The Senate PSI Report discusses two types of transactions relevant to the instant case: total return swap (TRS) transactions and securities or stock lending (SL) transactions. These transactions were used by U.S. financial institutions, including Redacted 2, to avoid withholding taxes on dividends received from U.S. corporations in which its foreign clients were invested.

On October 2, 2008, petitioner submitted a claim for reward package consisting of Form 211, a six-page cover letter, and nine exhibits. The claim concerned the withholding tax schemes employed by all of the taxpayers addressed in the Senate PSI Report, including Redacted 2. In late October 2008 members of the PSI contacted respondent's Whistleblower Office (WBO) to turn over the information obtained during the PSI hearing. On October 27, 2008, IRS personnel met with PSI officials to inventory the information obtained from the Senate hearing, including two CD-ROMs of information provided by petitioner.

On December 9, 2008, IRS Large Business & International (LB&I) (formerly Large and Mid-Size Business (LMSB or LB)) counsel notified the LB&I Financial Services group that they had received the PSI/whistleblower information, which included taxpayer-specific information related to the dividend withholding tax scheme.

II. *Petitioner's Claim*

On December 15, 2008, the WBO received from petitioner a bulk claim submission containing Forms 211 regarding multiple taxpayers related to the information submitted to the PSI concerning the dividend withholding tax scheme, including the Form 211 that forms the basis for the instant case concerning Redacted 2, 4, and 5. In that Form 211, petitioner alleged that Redacted 2, 4, and 5 participated in the dividend withholding tax scheme that he had exposed to the PSI.

On January 9, 2009, the WBO assigned legacy claim No. 29-92347 to petitioner's claim submission related to Redacted 2, 4, and 5 (petitioner's claim). Petitioner's claim was assigned claim No. 2010-000949 when it was migrated to the WBO's new e-trak claim system.

III.    *Audit of Redacted 2, 4, and 5*

In June 2006 an LB&I audit team, Field Team 1197, secured for examination Redacted 4's and Redacted 5's Forms 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, for the taxable year 2003.  LB&I Revenue Agent Steven A. Alperin of Field Team 1197 prepared an Examiner's Risk Analysis Worksheet for Redacted 4 and Redacted 5, identifying nonresident alien withholding taxes under sections 1441, 1442, 1446, and 1461,[1] including the SL transactions, as issues to be examined for taxable year 2003 (and taxable years 2004 through 2006, if applicable).

In March 2008, LB&I Field Team 1197 requested and secured for examination Redacted 4's and Redacted 5's Forms 1042 for taxable years 2004 through 2006.  On March 12, 2008, Computer Audit Specialist Team Manager Richard Goldstein approved Form 4764, Coordinated Examination Program Audit Plan, for Computer Audit Specialist Henry Klein's assistance to the audit team for Redacted 4's taxable years 2004 through 2006.

On April 11, 2008, the audit team, including Howard J. Klionsky, held a telephone conference to discuss the TRS transaction issue.  On May 27, 2008, Mr. Klionsky prepared Form 4764B, Examination Plan Issue Leadsheet (Exam Plan Leadsheet), for Redacted 5's Form 1042 for taxable year 2003, for Issue 01441.01-02, Liability of Withholding Agent, relating to dividends received.

On July 22, 2008, Mr. Klein received Redacted 5's response to the TRS transaction issue from Mr. Klionsky.  In September 2008, Mr. Klein prepared Form 4564, Information Document Request, requesting computer files from Redacted 2 for its 2006 taxable year.

On October 24, 2008, the audit team personnel held a meeting to discuss the TRS transaction issue.  On November 6, 2008, the audit team personnel held another meeting on the TRS transaction issue.

On November 25, 2008, Mr. Alperin prepared Exam Plan Leadsheets for Redacted 4's and Redacted 5's Forms 1042 for taxable years 2003 through 2006 for Issue 01441.00-00, Withholding of Tax on

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Nonresident Aliens. Also on November 25, 2008, Mr. Alperin prepared Exam Plan Leadsheets for Redacted 5's Forms 1042 for taxable years 2003, 2004, and 2006 for Issue 01441.00-00, Withholding of Tax on Nonresident Aliens.

On December 4, 2008, audit team personnel conducted a workshop on the TRS transaction issue.

On January 5, 2009, Kyunghee Piraino, the subject matter expert for LB&I whistleblower claims, emailed members of the audit team to inform them that they were being granted access to the PSI database for documents from the PSI's investigation related to Redacted 2 and that petitioner was the source of the PSI information. On January 7, 2009, the audit team received a copy of Redacted 5's TRS schedules that were previously requested by Mr. Klionsky. As part of its ongoing examinations of Redacted 4 and Redacted 5, the audit team reviewed the PSI documents, including documents related to the trading activity conducted by Redacted 2 with respect to the TRS transactions and the SL transactions. The audit team used information from the PSI database to request information from Redacted 2 through Information Document Requests.

The audit team determined that Redacted 4 and Redacted 5 had failed to properly withhold taxes on dividends paid to its foreign-based clients related to the TRS transactions for taxable years 2000 through 2012. In June 2014, the IRS entered into Forms 906, Closing Agreement on Final Determination Covering Specific Matters, with Redacted 4 and Redacted 5 for taxable years 2003 through 2010. The total amount of proceeds collected from Redacted 2 was $88,023,225.01, comprising $72,719,718.85 from Redacted 4 for the SL transactions and $15,303,506.16 from Redacted 5 for the TRS transactions. Redacted 4 and Redacted 5 made payments to the IRS based on the amounts set forward in the Closing Agreements on June 16, 2014.

IV. *The WBO's Determination*

On or about September 24, 2014, the audit team completed Form 11369, Confidential Evaluation Report on Claim for Award, for petitioner's claim. The Form 11369 was prepared and executed by audit team member John Topping and signed by his manager, Gerald Charles. The Form 11369 noted in relevant part that: (1) the taxpayer was already under audit or investigation for the tax year or years identified by the whistleblower; (2) the information provided led to adjustments in

the audit or investigation plan for this type of issue, such as expanding the scope of transactions to be examined or including specific transactions the whistleblower identified in the sample; (3) the whistleblower contributed to the development of facts in the audit or investigation because the IRS used the information provided to develop specific document requests or other inquiries of the taxpayer; and (4) some or all of the information provided by the whistleblower came from judicial or administrative proceedings, government reports, hearings, audits or investigations, or the media.

The Form 11369 was forwarded to the WBO on September 24, 2014, and it included a narrative describing petitioner's contribution to the identification of the issues to be examined or investigated and relevant documents from the withholding tax examinations of Redacted 4 and Redacted 5.

Felipe Castellanoz, a senior tax analyst with the WBO who managed petitioner's claim, reviewed the Form 11369 package submitted by the audit team. Upon review of the Form 11369 package, Mr. Castellanoz concluded that respondent used petitioner's information during a pre-existing administrative action and that proceeds were collected as a result of this action.

In January 2016, pursuant to the WBO's then-current procedures, Mr. Castellanoz began monitoring activity for Redacted 4's and Redacted 5's 2003 through 2008 taxable years on the IRS's Integrated Data Retrieval System (IDRS). Because Redacted 4's returns for taxable year 2013 were being controlled for a possible examination, Mr. Castellanoz concluded that he would need to continue monitoring the target taxpayers in IDRS before an award determination could be made by the WBO.

In June 2016 the WBO received Form 11369 for Redacted 4's taxable year 2013. The Form 11369 states that petitioner's claim "was reviewed for the limited purpose of determining applicability to DOJ Swiss Banking Program activity involving this bank and its U.S. customers with Swiss accounts. Alleged activity is unrelated to bank's U.S. customers with Swiss accounts." Because there was no connection between petitioner's claim and the DOJ Swiss Banking Program, petitioner's information was not used in an action relating to the DOJ Swiss Banking Program.

In September 2017 on the basis of IDRS research Mr. Castellanoz determined that LB&I Field Team 1197 had secured for examination Redacted 4's Form 1042 for the taxable year 2013; the examination was related to the Form 11369 received by the WBO in June 2016 and was closed in July 2017 as "Survey After Assignment." Also in September 2017 Mr. Castellanoz conducted an analysis of Redacted 4's and Redacted 5's Transcript and Payment Reconciliations for taxable years 2003 through 2005, which confirmed that LB&I initiated the examinations of Redacted 4 and Redacted 5 before obtaining access to the PSI database. After undertaking this research, Mr. Castellanoz determined that there were no ongoing withholding tax examinations of Redacted 4 and Redacted 5. Accordingly, on September 26, 2017, Mr. Castellanoz submitted a draft Award Recommendation Memorandum (ARM) to his manager, Steven Mitzel, recommending that petitioner receive an award of 22% of the proceeds collected using petitioner's information.

On September 26, 2017, Mr. Mitzel returned the draft ARM to Mr. Castellanoz to expand on the reasons for proposing an award percentage different from that used in prior claims filed by petitioner with regard to other taxpayers involving the same dividend withholding tax issues. As a result of Mr. Mitzel's comments, on September 26, 2017, Mr. Castellanoz emailed Ms. Piraino to have her ask LB&I Field Team 1197 when and for what reasons it started examining Redacted 4's and Redacted 5's Forms 1042.

On November 2, 2017, Ms. Piraino forwarded the audit team's answers to Mr. Castellanoz. LB&I Field Team 1197 responded that the PSI/whistleblower information did not lead the audit team to examine the target taxpayers' Forms 1042 for taxable years 2003 through 2006 because it was a "subsequent year examination," and that, in addition to the TRS transactions and the SL transactions, the audit team was examining other unrelated issues for Redacted 4's and Redacted 5's Forms 1042 for taxable years 2003 through 2008.

On November 14, 2017, Mr. Castellanoz revised his ARM to expand on the reasons he had recommended a different award percentage for petitioner's claim (22%) as compared to petitioner's other claims with the same withholding tax issues (30%). Mr. Castellanoz noted that petitioner's other claims had been handled differently. The audit team for petitioner's claim was already pursuing the dividend withholding tax issues for Redacted 4 and Redacted 5 when they received the PSI/whistleblower information.

The WBO relied on the documents in Form 11369, research conducted by the WBO, and communications from the audit team to establish that, before receiving access to the PSI database on or about January 5, 2009, the audit team had already identified and were already examining the dividend withholding tax issues, specifically the SL transactions and the TRS transactions, entered into by Redacted 4 and Redacted 5, respectively.

The WBO determined that a positive factor existed to increase the award percentage from the minimum award of 15%, in accordance with section 7623(b), the regulations under section 7623, and internal guidance at *Internal Revenue Manual* 25.2.2 (Aug. 7, 2015). The revised ARM summarized petitioner's claim and concluded:

> The Service collected additional proceeds in the amount of $88,023,225.01 from REDACTED 2 as a result of actions taken based on the whistleblower's information. The information provided identified taxpayer behavior that the Service was unlikely to identify. The information provided by the whistleblower was specific and responsible for the identification of the taxpayer and the understanding of the transaction. I recommend an award percentage of 22% of the proceeds collected based on the whistleblower information.

On January 3, 2018, the WBO issued a Preliminary Award Recommendation Letter (PARL) to petitioner, proposing an award of $18,084,957.47 based on an award percentage of 22% of collected proceeds. The PARL also noted that the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012, requires automatic reductions for sequestration[2] based on the amount determined by the Office of Management and Budget (OMB) for the year in which the payment is made. Attached to the PARL were a Summary Report, a Response to Summary Report, and a Confidentiality Agreement for petitioner's review. The Summary Report determined

---

[2] Sequestration is a measure by which Congress enforces mandatory spending cuts across most government programs and agencies during the budgetary process. Budget Control Act of 2011, Pub. L. No. 112-25, §§ 101–103, 125 Stat. 240, 241–46, *amended by* American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 901, 126 Stat. 2313, 2370 (codified as amended at 2 U.S.C. § 901(a) (2012)). The applicability of the sequestration and the sequestration percentage are based on the government fiscal year when the award is paid, with the procedures for this calculation set out by statute. *See* 2 U.S.C. § 901(a).

that a positive factor existed to justify an increase to 22% because "[t]he information provided identified connections between transactions, or parties to transactions, that enabled the IRS to understand tax implications that might not otherwise have been understood."

On January 17, 2018, the WBO received an executed Response to Summary Report and Confidentiality Agreement, wherein petitioner requested a more detailed explanation for the preliminary award recommendation and an opportunity to review the supporting documents.

On January 19, 2018, the WBO issued a Detailed Award Recommendation Letter (DARL) to petitioner, providing greater detail on the proposed preliminary award recommendation. Attached to the DARL was a Detailed Report and a Response to Detailed Report for petitioner's review. The Detailed Report stated in relevant part:

> The field team had already identified REDACTED 2's withholding tax issues prior to receiving the PSI/whistleblower information for consideration. They had opened the taxpayers 200312-200512 F-1042 withholding tax returns for exam and they had identified the TRS-dividend withholding issue prior to receiving the information. However, the PSI/whistleblower information did assist the field team in developing the withholding tax issues. The information helped the team identify connections between the lending and swap transactions which enabled them to better understand the withholding tax implications. The field team used the PSI/whistleblower information to request information from REDACTED 2 through IDRs. Therefore, the award amount is increased to 22%.

On February 9, 2018, the WBO received an executed Response to Detailed Report, wherein petitioner asked to schedule an appointment to review the supporting documents underlying the preliminary award recommendation. On March 12, 2018, petitioner's counsel sent a letter challenging the preliminary award recommendation that petitioner receive an award based on 22% of proceeds collected from the actions against Redacted 4 and Redacted 5. The letter stated, inter alia, that petitioner doubted the claim that the audit team raised the TRS transaction issue without the PSI/whistleblower information; claimed petitioner should receive at least 30% of the proceeds from the SL

transaction issue; questioned the delay in proposing the award; claimed petitioner should benefit from the target taxpayers' ceasing the SL transactions and TRS transactions in 2008; and requested the amount of the award based on 22% of collected proceeds be paid immediately while petitioner challenged the withholding of the remaining 8%.

On March 21, 2018, Mr. Castellanoz prepared a revised ARM after considering petitioner's assertions in the March 12, 2018, letter. The revised ARM proposed to maintain the recommended award of 22% of collected proceeds. Specifically, the revised ARM noted that "[t]here is no indication anyone within the IRS alerted Field Team 1197 about the TRS/Stock Lending issues involving REDACTED 2. The field team has specifically stated that the whistleblower's pre-2008 contacts with the IRS regarding the TRS withholding issues was not the reason they began pursuing these issues."

On April 2, 2018, the WBO sent petitioner a Final Determination Under Section 7623(b) (Final Determination) that petitioner is entitled to an award of $18,084,957.47 based on an award percentage of 22% of collected proceeds. The Final Determination again noted that the award was subject to an automatic sequestration reduction of a percentage determined annually by the OMB in the year of payment. The Final Determination reiterated the WBO's conclusion that the "information provided identified connections between transactions, or parties to transactions, that enabled the IRS to understand tax implications that might not have otherwise been understood."

On May 3, 2018, petitioner timely filed his Petition with this Court.

*Discussion*

I.  *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The summary judgment standard provided in Rule 121 has a slightly different application when reviewing whistleblower award determinations because "we must confine ourselves to the administrative record to decide whether there has been

an abuse of discretion." *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020); *see also* Rule 121(j). In a so-called record rule whistleblower case, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the [WBO's] action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Van Bemmelen*, 155 T.C. at 79.

II.    *Legal Background*

Section 7623 provides for awards to individuals (commonly referred to as whistleblowers) who submit information to the IRS about third parties who have underpaid their taxes or otherwise violated the internal revenue laws. Section 7623(a) authorizes discretionary payments in certain circumstances, while section 7623(b) provides for nondiscretionary (i.e., mandatory) awards. Under section 7623(b)(1), a whistleblower generally is entitled to a mandatory award if the Secretary of the Treasury proceeds with an administrative or judicial action based on information provided by the whistleblower and collects proceeds as a result of the action. The whistleblower is entitled to receive an award of at least 15%, but not more than 30%, of the proceeds collected, depending on "the extent to which the individual substantially contributed to such action." § 7623(b)(1).

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. *Kasper v. Commissioner*, 137 T.C. 37, 40 (2011); *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). Section 7623(b)(4) confers on our Court jurisdiction over any appeal of a determination that a whistleblower is entitled to an award under section 7623(b)(1). *Whistleblower 972-17W v. Commissioner*, 159 T.C. 1 (2022).

Our scope of review of whistleblower award determinations is properly limited to the administrative record, and the applicable standard of review is for abuse of discretion. *Kasper v. Commissioner*, 150 T.C. 8, 20, 22 (2018); *see Whistleblower 769-16W v. Commissioner*, 152 T.C. 172, 177 (2019). Further, in reviewing whistleblower award determinations, we follow the *Chenery* doctrine so as to judge the propriety of the WBO's determination solely on the grounds it actually relied on in making its determination. *See Kasper*, 150 T.C. at 23–24; *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *SEC v. Chenery Corp.*, 318 U.S. 80, 93–94 (1943).

Consequently, in reviewing a whistleblower award determination for abuse of discretion, we do not substitute our judgment for the WBO's but rather decide "whether the agency's decision was 'based on an erroneous view of the law or a clearly erroneous assessment of the facts.'" *Kasper*, 150 T.C. at 23 (quoting *Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13).

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Whistleblower 769-16W*, 152 T.C. at 178 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

III.    *The Parties' Cross-Motions for Summary Judgment*

The question central to both motions is whether the WBO abused its discretion in recommending an award of 22% instead of 30%. Petitioner argues that the WBO acted arbitrarily and capriciously in recommending a 22% award, when, in other claims involving the "same issue," he received a 30% award. On the other hand, respondent contends that the WBO did not abuse its discretion when applying a 22% award because its determination was sufficiently supported by the administrative record and within the bounds of reasoned decision making. We agree with respondent.

Under the administrative proceedings for award determinations, the WBO is to prepare and send to the whistleblower a preliminary award recommendation containing a PARL, a summary report, an award consent form, and a confidentiality agreement. Treas. Reg. § 301.7623-3(c)(2).

The whistleblower has 30 days from the date the WBO sends the PARL to respond by agreeing to the preliminary award recommendation (and thus waiving any and all administrative and judicial appeal rights), requesting a detailed report and opportunity to review supporting documentation, adding comments to the administrative claim file, or taking no action. *Id.* subpara. (3).

Should the whistleblower request the opportunity to review information from the administrative claim file, the whistleblower will then have 30 days from the appointment date to submit comments to the WBO on the detailed report and the documents reviewed, which will then be added to the administrative claim file and reviewed by the WBO when making its award determination. *Id.* subpara. (5).

After participation in the whistleblower administrative proceeding has concluded and there has been a final determination of tax (as defined in Treasury Regulation § 301.7623-4(d)(2)), the WBO will determine the award amount under section 7623(b)(1), (2), or (3) and Treasury Regulation §§ 301.7623-1 through 301.7623-4, on the basis of its review of the administrative claim file. Treas. Reg. § 301.7623-3(c)(6). As referenced above, as part of this review the WBO is tasked with analyzing an individual's claim by applying the rules provided in Treasury Regulation § 301.7623-4(c) to the administrative claim file to determine an appropriate award percentage. *Id.* para. (a)(1). The WBO must consider all relevant factors in determining whether an award will be paid, and, if so, the award amount. *Id.* subpara. (2).

The regulations provide lists of positive and negative factors to help determine the whistleblower's award percentage. *See* Treas. Reg. § 301.7623-4(b). Application of the following nonexclusive positive factors may support increasing the award percentage:

> (i) The whistleblower acted promptly to inform the IRS or the taxpayer of the noncompliance.
> (ii) The information provided identified an issue or transaction of a type previously unknown to the IRS.
> (iii) The information provided identified taxpayer behavior that the IRS was unlikely to identify or that was particularly difficult to detect through the IRS's exercise of reasonable diligence.
> (iv) The information provided thoroughly presented the factual details of tax noncompliance in a clear and organized manner, particularly if the manner of the presentation saved the IRS work and resources.
> (v) The whistleblower (or the whistleblower's legal representative, if any) provided exceptional cooperation and assistance during the pendency of the action(s).
> (vi) The information provided identifies assets of the taxpayer that could be used to pay liabilities, particularly if the assets were not otherwise known to the IRS.

(vii) The information provided identified connections between transactions, or parties to transactions, that enabled the IRS to understand tax implications that might not otherwise have been understood by the IRS.

(viii) The information provided had an impact on the behavior of the taxpayer, for example by causing the taxpayer to promptly correct a previously-reported improper position.

*Id.* subpara. (1). On the other hand, the application of the following nonexclusive factors may support decreasing the award percentage:

(i) The whistleblower delayed informing the IRS after learning the relevant facts, particularly if the delay adversely affected the IRS's ability to pursue an action or issue.

(ii) The whistleblower contributed to the underpayment of tax or tax noncompliance identified.

(iii) The whistleblower directly or indirectly profited from the underpayment of tax or tax noncompliance identified, but did not plan and initiate the actions that led to the underpayment of tax or actions described in section 7623(a)(2).

(iv) The whistleblower (or the whistleblower's legal representative, if any) negatively affected the IRS's ability to pursue the action(s), for example by disclosing the existence or scope of an enforcement activity.

(v) The whistleblower (or the whistleblower's legal representative, if any) violated instructions provided by the IRS, particularly if the violation caused the IRS to expend additional resources.

(vi) The whistleblower (or the whistleblower's legal representative, if any) violated the terms of the confidentiality agreement described in [Treas. Reg.] § 301.7623-3(c)(2)(iv).

(vii) The whistleblower (or the whistleblower's legal representative, if any) violated the terms of a contract entered into with the IRS pursuant to [Treas. Reg.] § 301.6103(n)-2.

(viii) The whistleblower provided false or misleading information or otherwise violated the requirements of section 7623(b)(6)(C) or [Treas. Reg.] § 301.7623-1(c)(3).

Treas. Reg. § 301.7623-4(b)(2).  The regulations further provide that

> [i]f the IRS proceeds with any administrative or judicial action based on information brought to the IRS's attention by a whistleblower, such whistleblower shall, subject to paragraphs (c)(2) and (3) of this section, receive as an award at least 15 percent but not more than 30 percent of the collected proceeds resulting from the action (including any related actions) or from any settlement in response to such action.  The amount of any award under this paragraph depends on the extent of the whistleblower's substantial contributions to the action(s).

Treas. Reg. § 301.7623-4(c)(1)(i).

Starting the analysis at 15%, the WBO will analyze the administrative claim file using the enumerated positive factors to determine whether the whistleblower merits an increased award percentage of 22% or 30%.  *Id.* subdiv. (ii).  The WBO will then analyze the contents of the administrative claim file using the enumerated negative factors to determine whether the whistleblower merits a decreased award percentage of 15%, 18%, 22%, or 26%.  *Id.*  Thus, the WBO *may* increase or decrease the award percentage on the basis of the presence and significance of any positive or negative factors.  *Id.*

The regulations also caution that the application of the positive and negative factors "cannot be reduced to a mathematical equation." *Id.*  Rather, the "factors are not exclusive and are not weighted and, in a particular case, one factor may override several others."  *Id.*  Further, while the presence and significance of positive factors may offset those of negative factors, the absence of a negative factor does not itself constitute a positive factor.  *Id.*  Likewise, "the [WBO] may determine separate award percentages on an action-by-action basis and apply the separate award percentages to the collected proceeds attributable to the corresponding actions."  Treas. Reg. § 301.7623-4(a)(2).

Petitioner urges us to find that the WBO abused its discretion in recommending a lower award percentage (22%) in the present claim compared to the award percentage recommended in claims against other taxpayers involving the same dividend withholding tax scheme (30%). Petitioner also urges a more formal "adjudication" of the positive factors identified during the WBO's review of the instant claim, assigning error to the WBO's ultimate determination that one positive factor's presence

and significance warranted an increased award percentage. Petitioner's arguments miss the mark.

When applying the positive and negative factors, the WBO is vested with broad discretion and must exercise its judgment in determining the appropriate award percentage for each claim before it. *See Luu v. Commissioner*, T.C. Memo. 2022-126, at *12 ("While Congress provides for a mandatory award for information brought by a whistleblower, ultimately the award amount is left to the IRS since Congress has provided an award range of 15% to 30% dependent upon the level to which the whistleblower 'substantially contributed' to the actions by the IRS."); *see also* Treas. Reg. § 301.7623-4(c)(1)(ii) ("The Whistleblower Office *may* increase the award percentage based on the presence and significance of positive factors." (Emphasis added.)). The positive and negative factors do not require comparisons or consistency between claims, even if brought by the same whistleblower or involved in a common scheme. *See* Treas. Reg. § 301.7623-4(b). On the facts here, the award percentage recommended in petitioner's other claims is simply not a consideration in the determination of the appropriate award percentage for petitioner's claim.

Further, while petitioner notes that each claim involves the "same" dividend withholding tax issue, the mere fact that the claims arise from a common scheme does not ipso facto make each claim identical. To the contrary, the record before us shows that petitioner's claim here, unlike petitioner's other claims that were responsible for the identification of taxpayers, was supported by valuable supplemental information to an audit that was already opened. *Cf. Apruzzese v. Commissioner*, T.C. Memo. 2019-141, at *10, *13 (finding no abuse of discretion in WBO's determination of 22% award where whistleblower provided information that contributed to already-initiated audit), *aff'd*, 811 F. App'x 1 (D.C. Cir. 2020). Rather than acting inconsistently in recommending a 22% award, Mr. Castellanoz considered the administrative claim file, sought additional information from the audit team, and addressed comments from his manager to expand on the differing percentages among petitioner's claims. At each step of his review of petitioner's claim, Mr. Castellanoz exercised reasoned judgment in reaching his determination that a 22% award was appropriate.

Our task is to review the WBO's determination and to uphold it unless we find the final determination to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Luu*,

T.C. Memo. 2022-126, at *22. Here, we find that the WBO did not err in recommending a 22% award. Thus, we will grant respondent's Motion and deny petitioner's Motion.

## IV. *Petitioner's Partial Motion*

Petitioner's Partial Motion alleges that the WBO additionally erred by (1) not paying the 22% immediately while petitioner challenged the remaining unpaid 8%; (2) not paying interest on the award due to petitioner; and (3) applying a sequestration reduction to petitioner's award proposal. We will briefly address each in turn.

### A. *Immediate Payment of 22%*

Regarding petitioner's first argument, the regulations make clear that three events must occur before the payment of a whistleblower award: (1) there is a final determination against the target; (2) the WBO makes a determination of the award relating to that tax and communicates that determination to the whistleblower in a determination letter; and (3) all appeals of the WBO's determination are final or the whistleblower has executed a consent form agreeing to the WBO's determination and waiving his right to appeal it. Treas. Reg. § 301.7623-4(d)(1); *see Lewis v. Commissioner*, 154 T.C. 124, 132 (2020). Petitioner declined to execute a consent form and instead exercised his right to appeal the WBO's award determination to this Court. As a result, all appeals of the WBO's determination are not yet final, and thus petitioner has no present entitlement to a payment of 22% of the proceeds.

### B. *Interest*

Turning to petitioner's second argument, we find no support for his assertion that he is entitled to interest on his award. The plain text of section 7623(b) does not provide for the payment of interest, and substantive canons of construction preclude any expansive reading of the provision's silence on the issue. In addition to the general rule that courts must construe waivers of immunity strictly in favor of the sovereign, *see McMahon v. United States*, 342 U.S. 25, 27 (1951), the so-called no-interest rule imposes a further level of strictness, *see Lib. of Cong. v. Shaw*, 478 U.S. 310, 318 (1986) ("When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly . . . ."). "[T]he sovereign is not liable for interest unless there is a statutory requirement or a contract to pay it." *Busser v. United States*, 130 F.2d 537, 538 (3d Cir. 1942) (first citing *Tillson v.*

*United States*, 100 U.S. 43 (1879); and then citing *United States v. North Carolina*, 136 U.S. 211 (1890)). Here, there is no such explicit statutory requirement. Although section 6611 provides an explicit statutory requirement for the payment of interest, it is limited to overpayments of tax. There is no overpayment at issue in this case. Accordingly, petitioner is not entitled to interest on his award.[3]

C. *Sequestration*

As to petitioner's final argument, it is not an abuse of discretion to apply the sequestration reduction when paying a whistleblower award. *Lewis*, 154 T.C. at 141. Accordingly, we find that the WBO did not err in the application of a sequestration reduction to petitioner's award.

Finding no abuse of discretion, we will thus deny petitioner's Partial Motion.

*Conclusion*

We have considered all remaining arguments the parties made, and, to the extent not addressed, we conclude they are irrelevant, moot, or meritless.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[3] To the extent that petitioner cites the Takings Clause of the Constitution, we likewise find this argument unpersuasive; a section 7623 claim does not create a private property interest. *See Lewis*, 154 T.C. at 138 n.11.